IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANIEL A.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:19cv00061 |
| | ) |
| ANDREW SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Daniel A. ("Daniel") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act").[2] 42 U.S.C. §§ 401–433.  Daniel alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) weigh the medical opinions in the record; and (2) account for his moderate impairments in concentration, persistence, or pace.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **DENY** Daniel's Motion for Summary Judgment (Dkt. No. 17) and **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. No. 19).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Daniel failed to demonstrate that he was disabled

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

under the Act.³ Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Daniel filed for DIB in March 2015, claiming that his disability began on February 18, 2015, due to severe major depression, psychosis, anxiety, and a thyroid condition. R. 22, 173, 188, 192. Daniel's date last insured was December 31, 2020; thus he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB.⁴

---

³ The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

⁴ The ALJ indicates that Daniel's date last insured was December 31, 2020. R. 22, 24. However, elsewhere in the record, Daniel's date last insured is indicated as December 31, 2019. R. 210.

R. 22, 24; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Daniel's applications at the initial and reconsideration levels of administrative review. R. 64–76, 78–90. On August 15, 2017, ALJ John Dawkins held a hearing to consider Daniel's claims for DIB. R. 36–63. Counsel represented Daniel at the hearing, which included testimony from vocational expert Asheley Wells. On December 20, 2017, the ALJ entered his decision analyzing Daniel's claims under the familiar five-step process[5] and denying his claim for benefits.[6] R. 22–31.

The ALJ found that Daniel was insured at the time of the alleged disability onset and that he suffered from the severe impairments of major depression and generalized anxiety disorder. R. 24. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. Id. The ALJ specifically considered listing 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). R. 24–25. The ALJ found that regarding his mental impairments, Daniel had moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing himself. R. 25.

The ALJ concluded that Daniel retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with certain non-exertional limitations.

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] Daniel was 44 years old on the alleged disability onset date, making him a younger person under the Act. R. 29.

Daniel can understand, remember, and carry out simple tasks, must work in an environment with few day-to-day changes, can have no work with the public and only occasional interaction with co-workers/supervisors, should not be required to work independently, decide how work processes would be performed, or independently set production goals. R. 26. The ALJ determined that Daniel would be unable to perform his past relevant work as a corrections officer, but that he could perform jobs that exist in significant numbers in the national economy, such as hand packager, laundry worker, and addressing clerk. R. 30. Thus, the ALJ determined that Daniel was not disabled. R. 31. Daniel appealed the ALJ's decision and the Appeals Council denied his request for review on December 20, 2017. R. 19–21.

## ANALYSIS

Daniel alleges that the ALJ failed to properly: (1) weigh the medical opinions in the record, including the opinion of his treating physician, Lillian Somner, D.O.; and (2) account for his moderate impairments in concentration, persistence, or pace.

### A. Medical History

Daniel had inpatient psychiatric admissions in January 2012 and August 2014, prior to his alleged onset date, and while he was still working as a corrections officer.[7] Daniel had his last inpatient psychiatric admission in February 19-23, 2015, coinciding with his alleged onset date of February 18, 2015. R. 192. Following the initial inpatient hospitalizations in 2012, Daniel was reportedly "very well stabilized on his medication" and "even had his gun rights restored in October 2012" through court petition. R. 27. Likewise, upon discharge in February 2015, he was "a little depressed" with poor insight and judgment, but had intact associations and was no longer

---

[7] Daniel was first treated for psychiatric issues in January 2012, though he had symptoms of mild depression previously, generally related to "situation stressors." R. 27. According to his medical records, he first became depressed around 2008 "related to a difficult custody problem" with an ex-girlfriend. R. 418.

paranoid. R. 295. Daniel was instructed by his doctor not to return to work as a corrections officer, as the work and job hours are "too stressful." Id.

Since stopping work, Daniel has not required any subsequent inpatient hospitalization. However, he has sought periodic psychiatric treatment from his treating physician, Lillian Somner, D.O., at the Center for Behavioral Health. Daniel had appointments in March, April, and May, 2015, where he described feeling "down," and had anxious mood and effect, but normal sleep, appetite, energy, interest level, and function. R. 417–19, 423–25, 426–28. Dr. Somner wrote in March 2015 that she "will not let him go back to being a prison guard. He can go back to work doing something else but not a guard with his odd hours and being 'on guard' all the time as he gets overwhelmed." R. 419. Daniel had similar follow-up appointments with Dr. Somner through the most recent appointment on record, in March 2017, where he had anxious mood and affect, but intact or unremarkable insight, thought process, content, and motor activity. R. 434. Daniel denied paranoia or depression, and reported "just hanging out at home." Id. Dr. Somner indicated Daniel's major depressive disorder was in full remission. Id.

1. Medical Opinion Evidence

State agency psychologists Stephanie Fearer, Ph.D. and Aroon Suansilppongse, M.D., in May and December 2015, respectively, reviewed the record and found that Daniel had moderate limitations in maintaining social functioning, maintaining concentration, persistence, or pace, and one or two episodes of decompensation.[8] R. 70–74, 84–88. Dr. Fearer wrote that Daniel's mental status exams showed "normal attention and concentration" and that while his ability to understand and remember detailed instruction is moderately limited, he is capable of understanding and remembering, simple, one and two-step instructions, work-like procedures,

---

[8] Dr. Fearer found Daniel had mild limitations in activities of daily living, while Dr. Suansilppongse found moderate limitations. R. 70–74, 84–88.

and locations. R. 73. Dr. Suansilppongse wrote that Daniel is "able to carry out instruction" and though his anxiety, depression, and hallucinatory experience would interfere with sustained concentration and persistence, he "would be able to complete tasks at an acceptable pace." R. 87. Dr. Suansilppongse also noted that, despite his limitations with social interaction, Daniel would be able to complete tasks with infrequent contact with others. R. 87–88. The ALJ gave the state agency doctors' opinions great weight. R. 29.

Dr. Somner completed a Mental Residual Functional Capacity Statement in July 2017. R. 455–58. Dr. Somner found a mix of mild and marked limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation, and indicated Daniel would need to miss 30 days of work per month. Id. Dr. Somner wrote that she, "put him out of his job as correctional officer because of his mental illness which was worsening over time." R. 458. The ALJ gave this opinion little weight. R. 28–29.

### B. Treating Physician's Opinion

Daniel argues that the ALJ's decision to discount Dr. Somner's opinion regarding his limitations is not supported by substantial evidence. Daniel asserts that the ALJ does not discuss Dr. Somner's diagnostic techniques or the required factors in 20 C.F.R. § 404.1527, and casts dispersion on Dr. Somner's opinion by indicating she is trying to assist Daniel with obtaining disability, with no support in the record for this claim. Daniel also argues that his records do not support the sustained improvement in his symptoms described by the ALJ. Finally, Daniel asserts that the Dr. Somner's opinion was not internally inconsistent, as she indicated he would be out of work at least 20% of the time, consistent with her expectation that Daniel would miss 30 days of work a month.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[9] 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D.Va. Dec. 29, 2010).

---

[9] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed prior to the effective date of the amended rule, I will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

7

Here, the ALJ appropriately considered these factors and the record, in determining the weight to give to the opinion of Dr. Somner. Acknowledging that Dr. Somner was Daniel's treating physician, and that she worked at the Center for Behavioral Health, and ALJ wrote:

> [Dr. Somner]offered a Mental Residual Functional Capacity Statement where she indicated that [Daniel] has major depression with psychosis resulting [in] some marked impairments in various areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. She further indicated that [Daniel's] impairments would substantially interfere with his ability to work on a regular and sustained basis at least 20% of the time and at the same time would need to miss work 30 days per month due to the impairment and treatment. Dr. Somner indicated that she [p]ut him out of his job as a corrections officer because of his mental illness, which was increasing over time. The opinion was given little weight however as there appears to be an intent to assist [Daniel] with obtaining disability.

R. 28. The ALJ also writes that he gives Dr. Somner's opinion little weight because the limitations "are not consistent with the improvement [Daniel] . . . experience[d] with treatment," as well as Daniel's own testimony. R. 29. Thus, the ALJ did not discount Dr. Somner's opinion solely because he felt she was trying to assist Daniel in obtaining disability, but instead, considered the whole record, and the appropriate factors.

The ALJ, supports his decision with specific references to the medical record, including how Dr. Somner's own records do not support her conclusions about Daniel's complete inability to work. The ALJ emphasizes that the "last treatment notes from Dr. Somner indicate that [Daniel's] depression is in remission." R. 29. Further, the ALJ notes that Daniel's mental health has "appeared to improve since leaving his job as a corrections officer" and supports this stating Daniel has required "no further inpatient hospitalizations" and his mental status exams have showed no paranoia or psychosis. Id. The ALJ acknowledges that the record shows Daniel has "struggled with depression and anxiety for quite some time" but emphasizes that his "more significant symptoms of paranoia and depression infrequently occurred." R. 28–29. Further, the ALJ gave great weight to the opinions of the state agency doctors, finding they were consistent

8

with Daniel's ongoing improvement, as well as Daniel's own testimony as to his activities. R. 29. The ALJ notes that, even though Daniel claimed to keep "nighttime hours" due to his years of night shift in the prison, he was still able to complete his grocery shopping, help his mother with chores, and even alter this schedule to participate in activities with his daughter during his regularly scheduled visitation. R. 29, 48, 54.

The ALJ adequately considered the factors outlined in 20 C.F.R. § 416.927(c)(2) and justified the weight afforded with specific reasons, including specific references to the medical record; See Hendrix v. Astrue, 2010 U.S. Dist. LEXIS 90922, at *7–8, 2010 WL 3448624 (D.S.C. Sept. 1, 2010) ("[A]n express discussion of each factor is not required as long as the ALJ demonstrates that he applied the § 404.1527(d) factors and provides good reasons for his decision."); Overcash v. Astrue, 2010 U.S. Dist. LEXIS 141695, at *16–17 (W.D.N.C. May 21, 2010). The ALJ considered the opinions of the treating and reviewing doctors, together with the evidence in the record, and determined that Daniel was capable of a full range of work at all exertional levels, with certain nonexertional limitations. This is the ALJ's job: to review the medical evidence of record, weigh the medical opinions, and determine an RFC that represents Daniel's functional capacity. Having reviewed the record as a whole, I conclude that substantial evidence supports the ALJ's decision to discount Dr. Somner's opinion.

### C. Mental Impairments under SSR 96-8P

Daniel argues that the ALJ failed to properly assess his mental impairments as required by SSR 96-8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Daniel asserts that the ALJ failed to properly address his moderate limitations in concentration, persistence, or pace, in assessing his RFC.

9

Daniel characterizes the ALJ's finding that Daniel would be able to complete tasks at an acceptable pace as "conclusory." Pl.'s Br. at 11, Dkt. 18.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, there is no "categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the

"medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

      Though Daniel cites to Mascio for support, this is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis. Further, unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite his moderate limitations in concentration, persistence, or pace, Daniel is capable of performing the work as outlined by the RFC. The ALJ specifically noted that Daniel's RFC "is his ability to do physical and mental work activities on a *sustained* basis despite limitations from his impairments." R. 23 (emphasis added). The ALJ referenced Daniel's testimony, the medical record, and the opinions from the state agency medical doctors as supporting Daniel's ability to carry out instructions and complete tasks at an acceptable pace. R. 25. For example, while the ALJ acknowledged that Daniel "was precluded from going back to his work as a corrections officer" because it was too stressful, the ALJ also noted that, since leaving his job, Daniel has required no further inpatient hospitalizations, and has had mental status exams showing no psychosis or paranoia, with his depression in remission by March 2017. R. 28–29. The ALJ

wrote that when Daniel "removed himself from the stressful situation at work and received treatment, his condition significantly improved." R. 29.

The ALJ acknowledged that Daniel's anxiety, depression, and alleged hallucinations would interfere with his ability to sustain concentration and persistence, and complete tasks; however, "he would be able to complete tasks at an acceptable pace." R. 25. This is not conclusory; to the contrary, here, the ALJ adequately accommodated Daniel's moderate impairment in concentration, persistence, or pace by limitations in the RFC that included simple tasks, an environment with few day-to-day changes, no work with the public, only occasional interaction with co-workers/supervisors, and no requirement that he independently decide how work processes would be performed, or independently set production goals.[10] R. 26. The ALJ explained that he considered the medical evidence which showed Daniel's mental health stabilized since the alleged onset date, and then continued improvement, as well as the "limitations assigned" by the state agency doctors, both of whom found Daniel not disabled. R. 29. Dr. Fearer noted that his mental status exams showed normal attention and concentration and that he is capable of understanding and remembering simple instructions, work-like procedures, and locations. R. 73. Dr. Suansilppongse specifically recognized Daniel's anxiety and depression, but concluded that he was able to complete tasks at an acceptable pace. R. 87. In Shinaberry, the Fourth Circuit rejected a challenge under Mascio, and found the ALJ, by discussing the evaluations performed by the state agency psychologists and the consultative examiner, "sufficiently explained why the mental limitation to simple, routine, and repetitive tasks accounted for [the claimant's] . . . moderate limitations in her concentration, persistence, or pace." Shinaberry, 952 F.3d at 121. Similarly, the ALJ here adequately supported his finding that

---

[10] Daniel did not challenge the ALJ's assessment of his moderate limitations in understanding, remembering, or applying information, interacting with others, or adapting or managing himself.

Daniel was able to sustain his work over a normal workday, without a corresponding limitation for pace.

The ALJ found moderate limitations in concentration, persistence, or pace, but also found no corresponding limitation in the ability to stay on task. This outcome is specifically contemplated by <u>Mascio</u> and <u>Shinaberry</u> – provided the ALJ explains his reasoning. The ALJ's reasoning here rests on the opinion of the state agency doctors, and a consideration of the record evidence, and this court is not "left to guess about how the ALJ arrived at [her] conclusions." <u>Mascio</u>, 780 F.3d at 637; <u>see also</u> <u>Massey v. Colvin</u>, No. 1:13-cv-965, 2015 U.S. Dist. LEXIS 79708, at *20, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015); <u>Hutton v. Colvin</u>, No. 2:14-cv-63, 2015 U.S. Dist. LEXIS 77846, at *8, 2015 WL 3757204, at *3 (N.D. W. Va., June 16, 2015). As such, I conclude that substantial evidence supports the ALJ's conclusions regarding Daniel's RFC.

## **CONCLUSION**

For these reasons, an order will be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

Entered: July 24, 2020

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge